**Cesar A. MORALES, Appellant,**

v.

**Maria Gudelia MARTINEZ, Appellee.**

**No. 6533.**

Court of Civil Appeals of Texas,
El Paso.

Dec. 29, 1976.

Rehearing Denied Jan. 20, 1977.

Fansler, Reese & Palacios, Ricardo D. Palacios, Nat B. King, Laredo, for appellant.

Texas Rural Legal Aid, Inc., George P. Powell, Edinburg, El Paso Legal Assistance Society, Israel Galindo, El Paso, for appellee.

OPINION

WARD, Justice.

Suit was by Dr. Cesar A. Morales against Miss Maria Gudelia Martinez for specific performance of an option contract to sell 154 acres of land in Zapata County. Based upon jury findings which sustained separate equitable defenses of mutual mistake of fact, fraudulent representation and duress, judgment was entered for the Defendant. We reverse and render.

On April 2, 1968, the Plaintiff and the Defendant entered into a contract of sale and an option agreement whereby the

Plaintiff agreed to purchase from the Defendant a tract of 110.26 acres of land in Zapata County at $100.00 per acre. An option was therein granted to the Plaintiff to purchase the balance of the Defendant's land of 154 acres at a price of $100.00 per acre. The terms of the option were for the lifetime of the Defendant and for two years after her death. Additionally, the Plaintiff agreed to pay for certain necessary survey work to enable the Defendant to separate and to perfect her title to the land from the claims of certain co-tenants, and to determine the exact acreage of the tracts involved.

On April 18, 1968, in accordance with the terms of the previous contract, the Defendant executed and delivered to the Plaintiff a general warranty deed conveying the 110-acre tract, reserving to the Defendant the vendor's lien to secure the balance due and owing on the tract as represented by a promissory note in the principal amount of $8,126.00 and payable in installments of $50.00 per month. At that time, and in accordance with the previous contract of sale, the Plaintiff made the down payment, paid the legal expenses for the cost of preparation of the deed to him, the cost of preparation of the partition between the Defendant and her co-tenants, and the cost of the survey work. According to the Plaintiff, these expenses amounted to $1,200.00.

On May 2, 1968, the Defendant Miss Martinez executed an oil and gas lease to one James A. Mayo on her remaining 154 acres which were under the option to Dr. Morales. To enable the Defendant to execute this oil and gas lease, the lessee required that Morales join with the Defendant in the execution of the oil and gas lease and therein agree to subordinate his option to this lease. It was also provided that the Defendant would collect all bonuses, as well as all rentals and royalties due under the terms of the lease, until such time as the Doctor might exercise his option. It was further agreed that in the event he exercised his option, then all rentals and royalties would

thereafter be paid to him. On July 5, 1968, Morales signed the oil and gas lease.

Also on July 5, 1968, the Plaintiff and the Defendant executed a surface lease of the 154 acres of land for a term of five years from July 1, 1968, to June 30, 1973, at a rental of $2.00 per acre per annum, payable annually in advance. This lease was in both the English and Spanish languages. It referred to the previous option and provided that if Dr. Morales exercised his option to purchase the land before the expiration of the five-year term of the surface lease, all payments due under the oil and gas lease would thereafter be payable to him, the surface lease would terminate, and no further rents would be payable to the Defendant. The Plaintiff was given the right to make such improvements on the land at his own cost and expense as he saw fit. It provided that the lessor "expressly ratifies and confirms the above referred to option granted to Lessee herein by the instrument executed by the parties hereto on April 2, 1968, * * * and neither this lease, nor the making of any improvements by Lessee shall in any way affect the agreed price for which the Lessee may purchase the above described land; and it is further understood and agreed that if Lessee herein has not exercised his option to purchase said land at the expiration of the five year term of this lease, such option shall continue in full force and effect and may be exercised by Lessee at any time thereafter during the lifetime of Lessor herein, or within two years after her death, by paying or tendering to Lessor herein the sum of $100.00 per acre as contemplated by said option * * of April 2, 1968 * * * ." It further provided that the failure on the part of the lessee, Morales, to pay the rents would be cause for termination of the lease, but termination of the lease would in no way affect the validity and binding effect of the option. The Doctor testified that thereafter he spent some $13,000.00 on improvements on the option land.

Thereafter, on June 11, 1973, the Plaintiff exercised his option to purchase the 154-acre tract and tendered to the Defend-

ant a deed for execution and the necessary payment. The Defendant refused to execute the deed and the present suit resulted. In her answer, she alleged that she never granted the Plaintiff an option to buy the 154 acres; that she understood the agreement was merely a granting to the Plaintiff of the first refusal on the property if she ever decided to sell; that she did not read English and did not understand the contracts which she had signed; and that she was fraudulently induced to execute all of the option contracts. She prayed for cancellation of the option clause.

█ The Plaintiff filed special exception to this pleading on the ground that the matter was essentially a counterclaim and was barred by the four-year Statute of Limitations, art. 5529, Tex.Rev.Civ.Stat. Ann. The special exception and the Plaintiff's objections made to the Defendant's testimony regarding these matters were overruled, and Plaintiff asserts error as the counterclaim had accrued five years previously and was therefore barred. While the pleading prayed for cancellation of the option agreement, the subject matter upon which the Defendant's counterclaim was based did not constitute an independent cause of action. It went to the foundation of the Plaintiff's cause of action on the option. While the cases have not been uniform, it seems clear that where the subject matter of a defendant's pleading is strictly by way of defense and operates merely as a negation of the plaintiff's right of recovery, the statute does not run. Being essentially defensive, it was not barred by the Statute of Limitations. *Preston v. Williams*, 427 S.W.2d 157 at 160 (Tex.Civ.App.—Eastland 1968, no writ). It has been suggested that to avoid the "semantic difficulty" involved in the subject matter where the Statute of Limitations might be applicable, the pleader should refrain from alleging the defense as a counterclaim. See 2 McDonald, Texas Civil Practice, Sec. 7.46; see also 37 Tex. Jur.2d 103. The Plaintiff's first two points are overruled.

Plaintiff next asserts "no evidence" as to the three equitable defenses claimed by the Defendant regarding the validity of the option contract and which she successfully used to secure the cancellation of the contract. Under the established rules, we must consider only the evidence and inferences, if any, which viewed in their most favorable light will support the jury findings and will disregard all the evidence and inferences to the contrary.

In so testing the evidence, it appears that the Defendant was an elderly woman unable to understand English and illiterate. It was her testimony that she never told the Plaintiff that she would give him an option on the 154 acres; that she did not know that the contract of April 2nd contained an option; that no one ever explained to her that the option was there, but that one Poncho Bustamante explained to her that in the event of any sale that the Plaintiff would be "the first one, the preferred one"; that later, her neighbors were receiving oil and gas checks and she was not, and Attorney Mann drew up a lease for her to execute, but she does not remember if she went to him or if the lease was brought to her by her relatives. Mr. Mann, or his secretary, told her about the option at that time and she was told that there was a check for her, but that the Doctor would also have to sign. She got very angry, cussed out everybody, and went to see Attorney Kazen, and that was the first time she found out about the option. She then saw three other attorneys about the option. It was then stipulated by the attorneys that she was stating that she found out about the option between May 13, 1968, and July 5, 1968. Attorney Kazen told her that he would take the option off, but she never went back to him as she had an "arrangement" or agreement with the Plaintiff that he would not enforce the option.

█ Based on this testimony, the equitable defenses were submitted to the jury on all of the contracts. Without further detail, there is a complete absence of testimony that would charge the Plaintiff with fraudulent conduct, duress, or any other equitable reason to void the grazing lease of July 5, 1968, with the complete ratification

of the option agreement contained therein. Regardless of the physical condition of the Defendant and of her lack of education, these parties were dealing at arm's length and there was no special relationship between them. It was the Defendant's burden to sustain proof of the elements of her defenses to the original option contract and to the ratification thereof of July 5th, and as to the ratification, she failed completely. The Plaintiff's no evidence points regarding mutual mistake of fact, fraudulent representation and duress are sustained at least so far as they relate to the July 5th contract.

If we were to reach the insufficient evidence points on the three equitable defenses, we would have sustained them and have remanded the case. There is no need to detail the complete evidence before us.

The Plaintiff's point regarding alleged jury misconduct is not reached. The judgment of the trial Court is reversed and judgment is here rendered granting to the Plaintiff specific performance of the option agreement of April 2, 1968, as prayed for by him.